**Miles Edward HAYNES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 46530.**

Court of Criminal Appeals of Texas.

Sept. 19, 1973.

Robert M. Jones, Dallas (Court appointed), for appellant.

Henry Wade, Dist. Atty., George S. Mc-Kearin, III, Asst. Dist. Atty., Dallas, Jim

D. Vollers, State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for rape by force and threats; the punishment, life, enhanced under Art. 62 Vernon's Ann.P.C.

The sufficiency of the evidence is not challenged.

The first ground of error urged by appellant is that the court erred in not permitting the witness Edenberg to testify that the house of Larry McCoy, the place of the alleged rape, was used for prostitution.

This testimony was offered, according to the statement of appellant's attorney, on the issue of consent. However, we do not find in the record that the issue of consent was raised by the evidence. Appellant did not testify or offer any evidence of consent, nor did any witness testify to any fact from which consent might be reasonably inferred.

The prosecutrix testified that she had just gotten out of jail on February 2, 1970, where she had been confined for about six weeks on an assault charge, for which the grand jury had no-billed her. She walked to South Dallas where she lived, was cold and sick and did not have a key to her apartment. She stopped by the rooming house of Larry McCoy, where an elderly woman by the name of Lucille Wilcox lived, and who was her friend. She had had a previous difficulty with appellant, who was known as Mo-Joe, who also lived there. According to her testimony, appellant began to call her "bitch," had Lucille Wilcox leave her bedroom where they were, pushed prosecutrix around, threatened to beat her up and forced her to have sexual intercourse with him against her will. She then became sick and went in the bathroom to vomit, appellant followed her, continued to threaten her, forced her into another room where a blind man was in bed sick with the flu, made the blind man get out of his bed, where appellant again had sexual intercourse with prosecutrix against her will by the use of threats and force.

The essential facts of these events were corroborated by Lucille Wilcox, Daniel Bell and Willie White, except that none of them was present in the rooms when the actual sexual intercourse took place. Larry McCoy, the proprietor, was not present, but came home as prosecutrix was leaving. She was crying and said to him, "He made me have him," by which he said he understood she meant sexual intercourse. McCoy testified that he told appellant he should not have done her that way, that "He told me he didn't do anything like that, he didn't say that he had paid her money to have an act of prostitution, that he was going to make her be his woman."

In response to questions by appellant's counsel, McCoy testified:

"Q What did he say he did; did anybody say anything to you about what somebody did there that day?

"A Well, they were talking about something happening, he rammed her.

"Q A fight?

"A No, that he rammed a girl, all of that."

Prosecutrix called the police and reported the rape the next day, and appellant was arrested on February 4. She did not have a telephone in her home and was sick.

Robert Vassell testified that on a previous occasion some weeks before February 2, 1970, he had an act of intercourse with prosecutrix for the payment of money.

The testimony of Edenberg, developed before the court in the absence of the jury, and which the court did not permit to be introduced before the jury, was that the house of Larry McCoy, the scene of the alleged rape, was a house of prostitution. Such testimony was offered on the question

of consent, but, as above stated, we find no evidence raising the issue of consent.

In Roper v. State, Tex.Cr.App., 375 S. W.2d 454, it was held that the issue of consent is not raised in a rape by force case by a plea of not guilty. It was there said that the previous unchastity of the female was no defense.

When consent is not an issue, evidence bearing on the prosecutrix' general reputation for chastity is not admissible, and excluding such evidence is not error. Jackson v. State, Tex.Cr.App., 470 S.W.2d 201; Jones v. State, 119 Tex.Cr.R. 525, 46 S.W.2d 308; Fite v. State, 139 Tex.Cr.R. 392, 140 S.W.2d 848.

In *Fite*, supra, it was said:

"A prostitute is capable of being the subject of rape, and unless consent vel non is made an issue, the matter of prosecutrix' chastity cannot be inquired into."

See also Harper v. State, 163 Tex.Cr.R. 361, 291 S.W.2d 950; Ross v. State, 60 Tex. Cr.R. 547, 132 S.W. 793.

It is noted that the proffered testimony did not relate to the general reputation of prosecutrix for chastity, but was only that the *house* at which prosecutrix stopped on her way home was a home of prostitution.

Even if it had been shown that prosecutrix was a prostitute, this would not have proved consent, or made her any the less the subject of rape by force. A prostitute does not lose the right of choice, and may consent or not consent according to her own will. The evidence shows that prosecutrix and appellant were on bad terms, and nothing in the record suggests that on this occasion any financial arrangements were made to obtain her consent, or that she otherwise consented.

We overrule the first ground of error.

Appellant's second ground of error is that the court erred in not allowing his counsel to argue that the home where the alleged rape occurred was a house of prostitution, shown to be such by the testimony of the witness Vassell.

It is true that Robert Vassell testified that he had an act of sexual intercourse with prosecutrix for money at that house some weeks before February 2, 1970, when the alleged rape occurred. There being no evidence of consent to the act made the basis of this prosecution, the specific act testified to by Vassell was not admissible. Graham v. State, 125 Tex.Cr.R. 210, 67 S.W.2d 296. However, since this evidence was before the jury, the court should have allowed appellant's counsel to comment thereon.

Appellant's counsel argued before the jury, "and you've got to admit that a rape in a prostitution house on a prostitute is sort of funny." And again, referring to the testimony of Vassell, "He paid money for a certain act at a certain place." And again he argued at length about the occurrence with the "little watchmaker" (Vassell), when Vassell, according to his testimony, had intercourse with prosecutrix for money at McCoy's house. A portion of the argument in regard to Vassell was:

"Robert Vassell came down. He is a watchmaker and he told you that he had bought Tootsie (prosecutrix) on that occasion. That he had paid her money for intercourse, and that she performed that intercourse that afternoon. That after the intercourse he had gone to sleep. When he awoke, he saw Tootsie was going through the pockets of his pants, . . ."

Another portion of the argument of appellant's attorney was:

"I think Tootsie got mad at this man because he wouldn't let her roll the watchmaker, and then she got herself in jail . . . . This is a rape case on a prostitute in a house where there had been prior prostitution. I didn't want

to make an error there, in a house where there had been prior prostitution and it was for money. There can be no consent where it is for money."

Thus, it appears that the court seemed to sustain an objection to the argument of counsel about Vassell's testimony, yet the court permitted such argument to proceed as if no such ruling had been made. We perceive no harm to appellant, and overrule the second ground of error.

Finding no reversible error, we affirm the judgment.

Opinion approved by the Court.